# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

SHEILA GRAVES, )
)
         **Plaintiff,** )
) CIVIL ACTION
v. )
) No. 10-2320-JWL
)
MICHAEL J. ASTRUE, )
Commissioner of Social Security, )
)
         **Defendant.** )
_____ )


# MEMORANDUM AND ORDER

Plaintiff seeks review of a partially favorable decision of the Commissioner of Social Security (hereinafter Commissioner) under sections 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act), which awarded Title II disability insurance benefits (DIB) for the closed period from April 22, 2005 through February 1, 2008, but found medical improvement and denied benefits for the period thereafter. Finding error in the administrative law judge's (ALJ's) credibility evaluation for the period after February 1, 2008, the court ORDERS that the Commissioner's decision is REVERSED, and that judgment shall be entered in accordance with the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent with this opinion.

## I. Background

Plaintiff applied for DIB on August 26, 2005 alleging disability since April 22, 2005. (R. 18, 56-60). The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an ALJ. (R. 18, 32-45). Plaintiff's request was granted, and Plaintiff appeared with counsel for a hearing before ALJ Edward C. Graham on May 28, 2008. (R. 18, 593-616). At the hearing, testimony was taken from Plaintiff, from a vocational expert, and from Plaintiff's mother. Id. On June 16, 2008 the ALJ issued a partially favorable decision finding that Plaintiff was disabled for a closed period from April 22, 2005 through February 1, 2008, but that medical improvement which was related to the ability to work occurred on February 2, 2008, and Plaintiff has not been disabled thereafter. (R. 18-25). Plaintiff disagreed with the determination that her condition medically improved, requested Appeals Council review of the decision, and provided additional evidence to the Appeals Council. (R. 12-13, 555-92). The Appeals Council accepted the additional evidence and made it a part of the administrative record, but found no reason to review the ALJ's decision, and denied Plaintiff's request. (R. 6-9). Therefore, the ALJ's decision is the Commissioner's final decision. Id. at 6; Blea v. Barnhart, 466 F.3d 903, 908 (10th Cir. 2006). Plaintiff now seeks judicial review.

## II. Legal Standard

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1051-52 (10th Cir. 2009) (citing 42 U.S.C. § 405(g)). Section 405(g) of the Act provides, "The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be

conclusive." The court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but less than a preponderance, and it is such evidence as a reasonable mind might accept to support a conclusion. Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). The determination of whether substantial evidence supports the Commissioner's decision, however, is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual can establish that she has a physical or mental impairment which prevents her from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months. Thompson v. Sullivan, 987 F.2d 1482, 1486 (10th Cir. 1993) (citing 42 U.S.C. § 423(d)); accord, Lax, 489 F.3d at 1084 (citing 42 U.S.C. § 423(d)(1)(A)). The claimant's impairments must be of such severity that she is not only unable to perform her

past relevant work, but cannot, considering her age, education, and work experience, engage in any other substantial gainful work existing in the national economy. Id.

The Commissioner uses a five-step sequential process to evaluate disability. 20 C.F.R. § 404.1520 (2008); Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps . . ., evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).

In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment, and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. If claimant's impairment(s) does not meet or equal a listed impairment, the Commissioner assesses RFC. 20 C.F.R. § 404.1520(e). This assessment is used at both step four and step five of the sequential process. Id.

After assessing claimant's RFC, the Commissioner evaluates steps four and five-- whether claimant can perform her past relevant work, and whether, when considering vocational factors of age, education, and work experience, claimant is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (citing Lax, 489 F.3d at 1084). In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at

4

751 n.2. At step five, the burden shifts to the Commissioner to show jobs within the claimant's capacity. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The Act and the regulations provide for termination of benefits if there has been medical improvement in the recipient's impairment(s) that relates to the recipient's ability to work, and if the recipient is able to engage in substantial gainful activity. 42 U.S.C. § 423(f); 20 C.F.R. § 404.1594. The regulations define "medical improvement" as:

> any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled. A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairment(s).

20 C.F.R. § 404.1594(b)(1).

The Commissioner has promulgated an eight-step sequential process to evaluate termination of benefits. Hayden v. Barnhart; 374 F.3d 986, 988 (10th Cir. 2004); Jaramillo v. Massanari, 21 Fed. Appx. 792, 794 (10th Cir. 2001); 20 C.F.R. § 404.1594(f)(1-8). If at any step a determination can be made that a recipient is unable to engage in substantial gainful activity, evaluation under a subsequent step is not necessary. 20 C.F.R. § 404.1594(f). In step one, the Commissioner must determine whether the claimant is presently engaged in substantial gainful activity. Id. § 404.1594(f)(1). Step two considers whether the recipient has a medically severe impairment or combination of impairments which is equivalent to one of the impairments listed in Appendix 1 to subpart P of the regulations. Id. § 404.1594(f)(2). If any or all of

5

the recipient's current impairment(s) meets or equals a listed impairment, her disability is conclusively presumed to continue. Id. In step three, the Commissioner determines if the recipient's impairment(s) which was present at the most recent favorable decision has undergone medical improvement. Id. § 404.1594(f)(3)&(b)(1). To determine whether medical improvement has occurred, the ALJ compares "the <u>current</u> medical severity of that impairment(s) which was present at the time of the most recent favorable medical decision . . . to the medical severity of that impairment(s) <u>at that time</u>." Id. § 404.1594(b)(7) (emphases added). Medical improvement has occurred where there is a decrease in medical severity, which is shown by "changes (improvement) in the symptoms, signs or laboratory findings associated with that impairment(s)." Id. § 404.1594(c)(1).

If medical improvement is found in step three, step four involves a determination whether that medical improvement is related to the recipient's ability to work. Id. § 404.1594(f)(4). In deciding whether medical improvement is related to the ability to work, the ALJ will compare the recipient's current residual functional capacity (RFC) "based upon this previously existing impairment(s) with [her] prior residual functional capacity." Id. § 404.1594(b)(7). "Unless an increase in the current residual functional capacity is based on changes in the signs, symptoms, or laboratory findings, any medical improvement that has occurred will <u>not</u> be considered to be related to [the recipient's] ability to work." Id. § 404.1594(c)(2) (emphasis added).

If the most recent favorable decision was based upon a finding at step three of the five-step sequential evaluation process that the recipient's condition met or equaled the severity of an impairment in the Listing of Impairments (20 C.F.R. Pt. 404, Subpt. P, App.1), an RFC assessment would not have been made because RFC is not assessed until the evaluation process continues beyond step three. Williams, 844 F.2d at 750-51; compare, 20 C.F.R. § 404.1520(e) (RFC assessed if impairment(s) do not meet or equal a listing), with § 404.1594(c)(3)(i) (if most recent favorable decision was based on a finding the impairment(s) met or equaled a listing, an assessment of RFC would not have been made). In such a case, where "medical improvement has occurred and the severity of the prior impairment(s) no longer meets or equals the same listing section used to make [the] most recent favorable decision, [the Commissioner] will find that the medical improvement was related to [the recipient's] ability to work." 20 C.F.R. § 404.1594(c)(3)(i).

If the Commissioner determines, at step three, that there has been no medical improvement or, at step four, that any medical improvement is not related to the recipient's ability to work, he will determine that disability continues unless he finds at step five that certain statutory exceptions apply. Id. § 404.1594(f)(5). If medical improvement related to the recipient's ability to work is found at steps three and four, the commissioner will determine, at step six, whether all of the recipient's current impairments in combination are severe. Id. § 404.1594(f)(6). If the recipient's current impairments in combination are severe, the Commissioner will assess her RFC at step

seven "based on all [her] current impairments, and consider whether [she] can still do work [she has] done in the past." Id. § 404.1594(f)(7). If so, the recipient's disability benefits will be terminated. Id. If not, then the Commissioner will determine at step eight whether (when considering the recipient's current RFC, age, education, and past work experience) she can perform other work existing in the economy. Id. § 404.1594(f)(8). If so, the recipient's disability benefits will be terminated. Id.

The burden in a termination case is on the Commissioner to show both (1) medical improvement related to the recipient's ability to work, and (2) that the recipient is currently able to engage in substantial gainful activity. Patton v. Massanari, 20 Fed. Appx. 788, 789 (10th Cir. Oct. 4, 2001) (citing Glenn v. Shalala, 21 F.3d 983, 987 (10th Cir. 1994); and 20 C.F.R. 404.1594(a)); Jaramillo, 21 Fed. Appx. at 794 (same). The "medical improvement" standard also applies in a "closed period" case. Shepherd v. Apfel, 184 F.3d 1196, 1198, 1200-01 (10th Cir. 1999);[1] Robbins v. Barnhart, 205 F. Supp. 2d 1189, 1195-99 (D. Kan. 2002) (discussing burden of proof in a "closed period" case, and holding that the Commissioner has the burden to prove both medical improvement and ability to engage in substantial gainful activity).

---

[1]The Shepherd court did not apply the "additional steps involved in disability reviews," but only the medical improvement standard. Shepherd, 184 F.3d at 1201, n.5 (citing 20 C.F.R. § 404.1594(f)). Here, the ALJ applied the eight-step evaluation process for termination cases. (R. 20-21). The court need not consider the propriety of this because neither Plaintiff nor the Commissioner objects to use of the eight-step process.

8

Here, Plaintiff alleges the ALJ erred: in finding that medical improvement occurred on February 2, 2008; in his RFC assessment; and in finding that Plaintiff's allegations of symptoms resulting from her impairments were "generally credible" through February 1, 2008, but were not credible beginning on February 2, 2008. The Commissioner argues the ALJ properly applied the medical improvement standard, made a proper credibility finding, and properly assessed Plaintiff's RFC. The court finds that the ALJ correctly applied the medical improvement standard, but that remand is necessary because he erred in evaluating the credibility of Plaintiff's allegations of symptoms.

### III. Medical Improvement

Plaintiff claims the ALJ made three errors in finding medical improvement. She argues that he erroneously failed to assess Plaintiff's RFC before February 2, 2008; that he never discussed whether Plaintiff's condition continues to meet or equal Listing 1.02; and that he failed to identify the evidence he relied upon in finding medical improvement. The Commissioner argues: that it was not error to fail to assess an RFC before February 2, 2008 because the ALJ found that Plaintiff's condition equaled Listing 1.02 during that period; that the ALJ found that Plaintiff's condition no longer met or equaled Listing 1.02 beginning February 2, 2008; and that the ALJ relied upon Dr. Vani's opinions both in finding Plaintiff's condition equaled Listing 1.02 through February 1, 2008, and in finding it no longer met or equaled Listing 1.02 beginning February 2, 2008. The court finds no error in the ALJ's application of the medical improvement standard.

9

Although, as Plaintiff asserts, the ALJ did not assess Plaintiff's RFC for the period before February 2, 2008, that "failure" is not erroneous. As the Commissioner points out, the ALJ found at step three of the five-step disability evaluation process that "From April 22, 2005 through February 1, 2008, . . . claimant's impairments equaled the criteria of section 1.02 of 20 CFR Part 404, Subpart P, Appendix 1." (R. 21). Therefore, in accordance with the five-step process, there was no need to assess RFC for that period. 20 C.F.R. § 404.1520(e) (RFC is assessed only "[i]f your impairment(s) does not meet or equal a listed impairment."). Moreover, the eight-step medical improvement evaluation process accounts for such an eventuality. 20 C.F.R. § 404.1594(c)(3)(i) (Recognizing that where the finding of disability was based on meeting or equaling a listing, no RFC will have been assessed, and concluding that in such a case, "If medical improvement has occurred and the severity of the prior impairment(s) no longer meets or equals the same listing section . . . we will find that the medical improvement was related to your ability to work."). It was not error to fail to assess RFC for the period before February 2, 2008.

As discussed above, the ALJ found based upon the medical evidence, and especially Dr. Vani's opinion, that Plaintiff's condition equaled Listing 1.02 from April 22, 2005 through February 1, 2008. (R. 21-22). Moreover, he found that, "Beginning on February 2, 2008, the claimant has not had an impairment or combination of impairments that meets or medically equals one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1." (R. 23). In context, it is clear that the ALJ found that Plaintiff's

condition no longer equals Listing 1.02 beginning February 2, 2008. Moreover, the ALJ specifically stated his analysis in this regard:

> The undersigned gives weight to Dr. Vani's assessment from January 2008 because it is supported by the objective findings and clinical evidence. Dr. Vani indicates in the January [24,] 2008 letter that the claimant is unable to manual labor [sic] such as house cleaning, laundry services, etc. Dr. Vani suggests, nevertheless, that the claimant would be able to do sedentary work, although he is of the opinion that she does not have the education or skills that allow her to do sedentary work. However, such vocational analysis is outside of Dr. Vani's expertise and the undersigned does not give it any weight. The undersigned agrees with Dr. Vani that from the claimant's alleged onset date through February 1, 2008, the claimant was disabled secondary to her left knee surgeries and DVT [(deep vein thrombosis)] and she equaled listing 1.02, but that as of February 2, 2008, approximately one year after the most recent and last of the planned stage[d] knee surgeries, she has been able to lift and carry 10 pounds occasionally and less than 10 pounds frequently, stand/walk 2 hours in an 8-hour workday, sit 6 hours in an 8-hour workday, and occasional climbing, balancing, stooping, kneeling, crouching and crawling.

(R. 22). Clearly, as quoted above, the ALJ discussed whether Plaintiff's condition continues to meet or equal the criteria of Listing 1.02.

In her final argument regarding medical improvement, Plaintiff claims the ALJ relied upon speculation to determine Plaintiff's condition no longer met a listing.[2]

Specifically, Plaintiff argues:

The ALJ determined that Graves's knee impairment was no longer disabling as of February 2008. Yet he failed to identify the evidence he

---

[2]Plaintiff couches her argument in terms of whether her impairment is disabling, but the real question here is whether medical improvement occurred. If Plaintiff's condition no longer meets a listing, medical improvement occurred which is related to her ability to work. Whether Plaintiff's condition is currently disabling, is a separate question which must be decided on remand at steps six through eight of the evaluation process.

> relied on to conclude that Graves reached medical improvement. The ALJ
> chose February 2, 2008 because it was one year after the most recent and
> last of Graves's knee surgeries. (R. 22). This conclusion, however, fails to
> establish the evidence the ALJ considered in deciding on that date.

(Pl. Br. 15). She argues that the ALJ arbitrarily found that Plaintiff's condition improved merely "because it had been more than a year since her last surgery," and that the ALJ's conclusion is merely an assumption which is not based on medical evidence. Id. (citing Roberts v. Barnhart, 36 Fed. Appx. 416, 419 (10th Cir. 2002) (speculation cannot substitute for substantial evidence)). She concludes her argument, "Without some citation of objective evidence indicating [Plaintiff's] knee injury improved, the ALJ's finding of medical improvement is not supported by substantial evidence." Id. at 16.

As the court noted above, the ALJ cited and discussed the medical evidence regarding the progress of Plaintiff's condition and her various staged surgeries. Moreover, as quoted above, the ALJ cited and relied upon Dr. Vani's January 2008 assessment to find that Plaintiff's condition improved and that "as of February 2, 2008, approximately one year after the most recent and last of the planned stage[d] knee surgeries," Plaintiff's condition had medically improved to the point that she no longer met or equaled Listing 1.02. (R. 22). The decision reveals the ALJ cited to the evidence upon which he relied to find medical improvement as of February 2, 2008.

Perhaps Plaintiff is arguing that the ALJ did not cite evidence which conclusively establishes that February 2, 2008 is <u>the day</u> Plaintiff's condition improved and she no longer met or equaled Listing 1.02. However, the court find's no requirement that there

be some medical evidence establishing a particular sign, symptom, or laboratory finding which changed on a particular day, thereby establishing that day as the day when medical improvement occurred. Here, the ALJ relied upon Dr. Vani's letter dated January 24, 2008, which suggested that Plaintiff had the physical abilities to perform sedentary work, upon the fact that Plaintiff's last planned staged surgery occurred on January 12, 2007, upon the fact that Plaintiff had more than a year for recovery from the last surgery, and upon Dr. Vani's treatment notes and letters which indicated Plaintiff had in fact recovered sufficiently that she no longer met Listing 1.02. Plaintiff's argument that the ALJ relied upon Dr. Vani's comments, and "not on the objective evidence in the record," is unavailing because the physician's opinion is objective evidence upon which the ALJ may rely. Moreover, the ALJ is not a medical expert, and absent contrary medical evidence may not reach medical conclusions which are contrary to the opinion of a treating physician. Although the ALJ might properly have relied upon the date Dr. Vani last treated Plaintiff while forming his opinion (January 8, 2008), or the date of Dr. Vani's opinion letter (January 24, 2008) as the date upon which he found medical improvement, the court sees no reason he must do so. Moreover, February 2, 2008 is certainly within the acceptable range of dates to find medical improvement based upon the evidence cited by the ALJ, and the court finds no error in choosing that date.

## IV. Credibility Determination

Plaintiff's remaining allegations of error are that: (1) the ALJ's RFC assessment is not based on substantial evidence because Dr. Vani's opinion regarding sedentary work

13

was not based upon a function-by-function assessment and because the ALJ improperly relied upon the state agency assessment regarding a period during, rather than after, the closed period of disability; and (2) the ALJ failed to properly support his credibility finding for the period after February 1, 2008. The Commissioner argues that both the credibility finding and the overall RFC assessment for the period beginning February 2, 2008 are proper. The court entertains serious doubts (1) whether Dr. Vani's medical opinion must be rejected because Dr. Vani did not perform a function-by-function analysis, and (2) whether the ALJ actually relied upon the June 2006 opinions of the state agency consultants in making his RFC assessment for the period after February 1, 2008. Nevertheless, it need not and will not address those issues to determine that remand is necessary in the circumstances of this case. Here, the ALJ erred in evaluating the credibility of Plaintiff's allegations of symptoms, and remand is necessary for a proper evaluation. Because a credibility determination is a necessary part of a proper RFC assessment, it will be necessary for the Commissioner to reassess RFC on remand, and Plaintiff may make all of her arguments in that regard before the Commissioner.

Plaintiff claims that the ALJ did not closely and affirmatively link his credibility findings with substantial evidence in the record, and that the ALJ erred by relying upon Plaintiff's daily activities to find her allegations not credible. The Commissioner argues that the ALJ applied the proper legal standard explained in Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987), and that substantial evidence in the record supports the credibility finding. In her reply brief, Plaintiff argues that certain of the rationale suggested by the

14

Commissioner in support of the ALJ's credibility determination were not relied upon by the ALJ and are therefore merely post hoc justification of the decision which may not be relied upon by the court to affirm the decision.

As the Commissioner's brief suggests, the Tenth Circuit explained the legal standard for evaluating the credibility of a claimant's allegations of symptoms in Luna. The Luna framework requires that an ALJ must consider (1) whether the claimant has established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, claimant's pain is in fact disabling. Thompson, 987 F.2d at 1488. The Commissioner argues that the ALJ applied the Luna framework. Plaintiff accepts that assertion, but claims the ALJ did not support his findings with substantial evidence in the record.

An ALJ's credibility determinations are generally treated as binding on review. Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990). "Credibility determinations are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence. Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005). Therefore, in reviewing the ALJ's credibility determinations, the court will usually defer to the ALJ on matters involving witness credibility. Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994). "However, '[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of

findings.'" Hackett, 395 F.3d at 1173(quoting Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988)).

Here, the ALJ discussed the credibility of Plaintiff's allegations of symptoms:

After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible beginning on February 2, 2008, to the extent they are inconsistent with the residual functional capacity assessment for the reasons explained below.

[(1)] The claimant's subjective complaints and alleged limitations are out of proportion to the objective findings as noted above. [(2)] There is no evidence of severe disuse muscle atrophy that would be compatible with the claimant's alleged inactivity and inability to function.

[(3)] The claimant testified to doing light household tasks such as cooking, driving a car, housework, and grocery shopping. That indicates the claimant could at least do sedentary work.

(R. 24) (numbering of reasons added).

As Plaintiff argues, the ALJ did not closely and affirmatively link his credibility findings with substantial evidence in the record. Rather, they are just conclusions in the guise of findings. Reason number one found Plaintiff's allegations "out of proportion to the objective findings," but the ALJ did not explain in what manner they are out of proportion, or which objective findings are disproportional to the allegations. Reason number two asserts that there is "no evidence of severe disuse muscle atrophy that would be compatible with the claimant's alleged inactivity and inability to function," but the ALJ made no citation to record medical evidence or other admissible authority for the

16

proposition that "severe muscle disuse atrophy" would be necessarily coincident with Plaintiff's condition as alleged. Further, the ALJ is not a medical expert entitled to rely upon his own opinion in that regard. Although the court's review of the evidence reveals some support in the record for reason number three, the Tenth Circuit has long held that the sporadic performance of minimal activities does not establish that a claimant is able to work. E.g., Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983) (working in the yard, performing a few household tasks, working on cars, taking occasional trips with brother in camper); Byron v. Heckler, 742 F.2d 1232, 1235 (10th Cir. 1984) (jogging and intermittent work as a janitor); Frey v. Bowen, 816 F.2d 508, 516-17 (10th Cir. 1987) (daily activities); Thompson, 987 F.2d at 1490 (minimal daily activities).

Finally, and perhaps most importantly in the circumstances of this case, Plaintiff's testimony and other allegations regarding the severity of her symptoms was addressed to establishing disability continuously from April 2005 through the date of her hearing, and she made no distinction in their severity over time. The ALJ did not specifically question Plaintiff regarding her symptoms over time or any difference between her symptoms before or after February 1, 2008. Nevertheless, the ALJ found Plaintiff's allegations "generally credible" from April 22, 2005 through February 1, 2008 (R. 22), and "not credible beginning on February 2, 2008, to the extent they are inconsistent with the residual functional capacity assessment." (R. 24). While there may be a basis in the record evidence to find that the severity of Plaintiff's symptoms changed over time and that, therefore, Plaintiff's allegations were no longer credible after a certain date, the ALJ

17

provided no citation to such evidence, and no evidentiary basis for different findings regarding credibility before and after February 1, 2008. Remand is necessary for the Commissioner to ensure that the credibility findings are closely and affirmatively linked to substantial evidence in the record.

**IT IS THEREFORE ORDERED** that the Commissioner's decision is REVERSED, and judgment shall be entered in accordance with the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for proceedings consistent with this opinion.

Dated this 23rd day of March 2011, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**